Daniel M. Hutchinson (SBN 239458)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008
dhutchinson@lchb.com

Rachel Geman (admitted *pro hac vice*)
Jessica Moldovan (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592
rgeman@lchb.com
jmoldovan@lchb.com

*Counsel for Plaintiff and the Proposed FLSA Collective*
*(additional counsel listed on signature block)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Anthony Foreman, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Apple, Inc.,<br><br>Defendant. | Case No. 3:22-cv-03902<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 14, 2023<br>Time: 1:00 p.m.<br>Courtroom: 4; Videoconference only<br>Judge: Hon. Vince Chhabria |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 14, 2023, at 1:00 p.m., or as soon thereafter as the matter may be heard by video conference only, in Courtroom 4 of this Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Anthony Foreman ("Plaintiff") will, and hereby does, move this Court for approval of the Stipulation of Collective Action Settlement and Release (the "Settlement," attached as Exhibit 1 to the Declaration Of Daniel M. Hutchinson In Support of Plaintiff's Motion for Approval of FLSA Collective Action Settlement ("Hutchinson Declaration")) with Defendant Apple, Inc. ("Defendant" or "Apple"), including payments to the Opt-Ins according to the Distribution Plan set forth therein, assignment of Settlement Administrator duties to Simpluris, Service Award Payments to the Plaintiffs, and attorneys' fees and cost payments to Plaintiff's Counsel.

This motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Opt-Ins; and should be approved, as discussed in the attached memorandum.

The motion is based on this notice, the following memorandum in support of the motion, the Hutchinson Declaration, the Declaration Of Charles Stiegler ("Stiegler Declaration"), the Declaration Of Robert B. Landry ("Landry Declaration") and Exhibits; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. PROCEDURAL HISTORY ........ 1
III. SETTLEMENT TERMS ........ 4
A. The Settlement's Basic Terms ........ 4
B. Implementation Of The Settlement ........ 4
C. The Distribution Plan ........ 5
D. The Release ........ 6
IV. ARGUMENT ........ 6
A. Legal Standard ........ 6
B. A *Bona Fide* Dispute Existed Between The Parties Regarding The Merits Of Their Claims And Defenses. ........ 7
1. The Parties Disputed Legal Issues Integral To Plaintiff's FLSA Claims. ........ 9
2. The Parties Disputed Factual Issues Integral To Plaintiff's FLSA Claims. ........ 10
3. The Parties Disputed The Collective Nature Of Plaintiff's FLSA Claims. ........ 11
4. The Parties Disputed The Amount Of Damages Incurred By Plaintiff And The Opt-Ins. ........ 11
C. The Settlement Represents A Fair And Reasonable Resolution Of A *Bona Fide* Dispute. ........ 11
1. The Settlement Is Within The Plaintiffs' Range Of Possible Recovery ........ 12
2. The Settlement Occurred At An Appropriate State Of The Litigation ........ 12
3. The Litigations Risks Weigh In Favor Of Settlement Approval ........ 13
4. The Settlement's Release Provision Is Limited To The Current Dispute ........ 14
5. Plaintiffs' Counsel Is Experienced As It Relates To FLSA Wage & Hour Litigation ........ 15
6. The Settlement Process Contained No Evidence Of Fraud Or Collusion. ........ 16
D. The Settlement's Proposed Named Plaintiff Service Awards Are Fair And Reasonable. ........ 19
E. The Settlement's Proposed Allocation For Plaintiffs' Counsel Attorneys' Fees And Costs Award Is Reasonable. ........ 19
1. The Settlement's Proposed Attorney's Fees For Plaintiff's Counsel Are Reasonable. ........ 20
2. The Settlement's Proposed Cost Reimbursement Is Reasonable. ........ 21

**TABLE OF CONTENTS**

**Page**

V. CONCLUSION .................................................. 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012) ... 16, 18, 20

*Alder v. Cnty. of Yolo*,
No. 16-cv-01682-VC, Dkt. No. 27 (E.D. Cal. Jan. 22, 2018) ... 7, 16, 17

*Andrade v. Arby's Rest. Grp., Inc.*,
225 F. Supp. 3d 1115 (N.D. Cal. 2016) ... 18, 20

*Biggs v. Wilson*,
1 F.3d 1537 (9th Cir. 1993) ... 9, 14

*Estorga v. Santa Clara Valley Transportation Auth.*,
2020 WL 7319356 (N.D. Cal. Dec. 11, 2020) ... 13, 14

*Fossett v. Brady Corp.*,
2021 WL 2273723 (C.D. Cal. Mar. 23, 2021) ... 20

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ... 17

*Gomley v. Crossmark, Inc.*,
2015 WL 1825481 (D. Idaho Apr. 22, 2015) ... 9, 13

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ... 16

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ... 21

*In re Media Vision Tech. Sec. Litig*.,
913 F. Supp. 1362 (N.D. Cal. 1996) ... 20

*Kerzich v. Cnty. of Tuolumne*,
335 F. Supp. 3d 1179 (E.D. Cal. 2018) ... 7, 18, 20

*Khanna v. Inter-Con Sec. Sys., Inc.*,
2012 WL 4465558 (E.D. Cal. Sept. 25, 2012) ... 7

*Los Angeles Cnty. DPSS v. Ray*,
2023 WL 3937617 (U.S. June 12, 2023) ... 14

*Madrid v. teleNetwork Partners, LTD.*,
2019 WL 3302812 (N.D. Cal. July 23, 2019) ... 14

*Millan v. Cascade Water Servs., Inc.*,
310 F.R.D. 593 (E.D. Cal. 2015) ... 17

*Nen Thio v. Genji, LLC*,
14 F. Supp. 3d 1324 (N.D. Cal. 2014) ... 6

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ... 12

*Ray v. Los Angeles Cnty. Dep't of Pub. Soc. Servs.*,
52 F.4th 843 (9th Cir. 2022) ... 14

*Rodriguez v. Danell Custom Harvesting, LLC*,
327 F.R.D. 375 (E.D. Cal. 2018) ... 7

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ... 19

*Selk v. Pioneers Mem. Healthcare Dist.*,
159 F. Supp. 3d 1164 (N.D. Cal. 2016) ... passim

*Slezak v. City of Palo Alto*,
2017 WL 2688224 (N.D. Cal. June 22, 2017) ... 11, 12, 13

**Statutes**

29 U.S.C.
§ 201 *et seq.* ("FLSA") ... 2

29 U.S.C.

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

§ 216 .......... 5, 17, 19

Cal. Labor Code
§§ 204 .......... 2

Cal. Labor Code
§§ 226 .......... 2

Cal. Labor Code
§§ 510 .......... 2

California Business & Professions Code
§§ 17200, *et seq.* .......... 2

**Rules**

29 C.F.R.
§ 785 .......... 9, 10, 13

29 C.F.R.
§ 790 .......... 9

**Other Authorities**

1 Guide to Employment Law and Regulation
§ 12:2 (When Wages Are Due) .......... 9

## I. INTRODUCTION

As a result of extensive arm's-length negotiations under the supervision of mediator David Rotman, Plaintiff Anthony P. Foreman ("Plaintiff"), individually and on behalf of all members of this collective action (collectively "Opt-Ins") and Defendant Apple, Inc. ("Defendant" or "Apple"), have reached a Settlement of this Fair Labor Standards Act ("FLSA") collective action. The parties have agreed to settle all of the claims of the 230 Opt-In Plaintiffs ("Opt-Ins") and to dismiss all other claims in the case. The Settlement Fund of $500,000 to resolve the claims of the Opt-In Plaintiffs is fair, reasonable, and adequate.

As set forth below, this proposed settlement meets all relevant criteria for settlement approval under Ninth Circuit authority, and constitutes "a fair and reasonable resolution of a bona fide dispute" as addressed by Paragraph 66 of the Court's Standing Order for Civil Cases before Judge Vince Chhabria. Specifically, the Settlement provides substantial monetary relief to the Opt-Ins; occurs after sufficient discovery and litigation; eliminates the risks inherent in further litigation; was negotiated by experienced attorneys using the necessary frameworks to avoid collusion (or its perception); and does not include a blanket release of all potential related claims against Apple.

For these reasons, Plaintiff respectfully requests that the Court grant approval to this proposed FLSA collective action settlement.

## II. PROCEDURAL HISTORY

Beginning in early 2022, Plaintiff's counsel began a thorough and complete pre-filing investigation into Apple's pay practices for its Solutions Consultants. Plaintiff's investigation showed that: (1) Apple's overtime pay rate each month did not include the commissions that Solutions Consultants earned that month and (2) Apple did not pay all Solutions Consultants for travel time between required meetings and their worksites. After completing that investigation, on May 3, 2022, Plaintiff's counsel reached out to Apple to discuss an early resolution before a great deal of time and expense was incurred by any party in litigating this matter. Hutchinson Decl., ¶ 27. Plaintiff's counsel communicated that if "Apple has any interest in discussing the possibility of a resolution at this point and/or reaching a tolling agreement to discuss this matter

further, please contact [Plaintiff's counsel] by no later than May 17, 2022." *Id*. That attempt was unsuccessful.

On June 1, 2022, Plaintiff filed his Collective Action Complaint seeking unpaid wages under the FLSA, on behalf of all similarly situated current and former Apple Solutions Consultants. *See* Compl., ¶ 1 (Dkt. No. 1). Plaintiff alleged that Apple (1) improperly calculated the regular rate of pay for overtime wages and (2) failed to include mandatory travel time. *Id*. at ¶¶ 2-3. Plaintiff further alleged that Apple's conduct violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. Id*. at ¶ 4.

On August 3, 2022, Apple filed an answer to the Complaint, denying that it incorrectly calculated Plaintiff's regular rate for the purposes of determining overtime. *See* Answer To Compl., ¶¶ 20-23 (Dkt. No. 15). Apple admitted instructing Plaintiff to "to clock in for work meetings," but denied failing to pay for mandatory travel when Plaintiff commuted from the location he attended the meetings (i.e., his home) to his work site. *See id*. at ¶¶ 24-29. Apple, however, was unwilling or unable to provide any evidentiary support of these factual contentions.

On August 31, 2022, Plaintiff filed his First Amended Complaint adding California Plaintiff Connor Sleighter and six causes of action under California law for failure to pay overtime wages (Cal. Labor Code §§ 510, 1194); failure to furnish accurate wage statements (*id.* §§ 226, 226.3); failure to timely pay all wages earned (*id.* §§ 204, 210); violating California's Unfair Competition Law (California Business & Professions Code §§ 17200, *et seq.*); and violating California's Private Attorneys General Act ("PAGA"). *See* First Am. Compl. ("FAC"), ¶¶ 7-10, 44-45, 80-104 (Dkt. No. 26).

On September 16, 2022, Apple filed a motion to compel arbitration for Plaintiff Sleighter, claiming that Plaintiff Sleighter and Apple executed an arbitration agreement that required arbitration of his claims. *See* Mot. To Compel Arbitration p. 1 (Dkt. No. 32). Apple asked the Court to order Plaintiff Sleighter to submit his claims to individual arbitration and to dismiss all California claims. *Id*. at 9.

On November 22, 2019, the Court compelled Plaintiff Sleighter's claims to arbitration. *See* Order Granting Mot. To Compel Arbitration p. 1-2 (Dkt. No. 44). The Court held that since

"there is no other named plaintiff for the [California] class action claims, those claims are dismissed . . . [and the] FLSA collective action will go forward." *Id.* This action—and the parties' Settlement—therefore only addressed FLSA claims, not any claims under California law.

The parties engaged in extensive discovery regarding the FLSA claims. On September 7, 2022, Plaintiff sent Apple counsel a set of twenty-six Requests For Production[1] ("RFPs"). Hutchinson Decl., ¶ 44. Apple responded with thousands of pages of documents. *See id.* at ¶ 45. On September 23, 2022, Apple sent Plaintiff a set of twenty RFPs. *Id* at ¶ 46. In response, Plaintiff and Opt-Ins provided hundreds of pages of relevant pay statements, time cards and communications. *Id.* at ¶ 47. Both parties also sent and responded to interrogatories. *Id.* at ¶ 48. On December 27, 2022, Apple produced a representative sample of Solutions Consultants' pay data production, including over 15,000 pages of earnings statements and records of Solutions Consultants' home addresses and store locations. *Id.* at ¶ 53. Plaintiff's FLSA wage and hour expert analyzed the data to assess Apple's potential liability and Plaintiff's and Opt Ins' potential damages. *Id.* at ¶ 55. Apple deposed Plaintiff Foreman and Opt-Ins Pflughaupt and Morgan. *Id.* at ¶ 49.

The formal and informal discovery greatly clarified—and narrowed—the parties' factual disputes. In particular, Apple's production of comprehensive earning statements on the eve of mediation confirmed that it *retroactively* paid a regular rate to Solutions Consultants that included earned commissions between one to two pay periods *after* the Solutions Consultants performed that work. *See* Hutchinson Decl., ¶ 56. This shifted the question from whether Solutions Consultants were still owed unpaid overtime wages including earned commissions, to whether Solutions Consultants are owed liquidated damages because Apple allegedly did not make these retroactive overtime payments in the same pay period that Solutions Consultants earned these commissions. Discovery also confirmed that Apple paid travel time for certain Solutions

---

[1] Plaintiffs sought, among other things, "COMPUTER-READABLE FORMAT spreadsheets, databases, AND/OR documentation reflecting [identifying and compensation] information for ALL COLLECTIVE MEMBERS," "ALL DOCUMENTS RELATING TO statements by DEFENDANT payment to CLASS MEMBERS AND COLLECTIVE MEMBERS RELATING TO" travel time and regular rate of pay and timekeeping, meeting and compensation policies. *See* Hutchinson Decl., ¶ 44.

Consultants, including all persons who held the title of Lead Solutions Consultant. *See id.* at 57. This also narrowed the scope of Plaintiff's proposed FLSA collective action claims.

On January 30, 2023, the parties attended a full-day mediation session presided over by Mr. David Rotman. Hutchinson Decl., ¶ 58. The session did not result in a settlement. *See id.* at ¶ 58-63. The parties submitted detailed mediation briefs to Mr. Rotman, setting forth their respective views on the strengths of their cases, but did not exchange the mediation briefs, as Apple was unwilling to do so. *Id.* at ¶ 59. On April 17, 2023, the parties attended a second mediation session presided over by Mr. Rotman and this time exchanged analyses and arguments regarding the merits of their respective positions. *Id.* at ¶¶ 65-67. On April 21, 2023, pursuant to a mediator's proposal, the parties agreed to settle the Action, recognizing the risks and significant expense of continued litigation. *Id.* at ¶¶ 70-72.

## III. SETTLEMENT TERMS

### A. The Settlement's Basic Terms

The parties have executed a Stipulation of Collective Action Settlement and Release ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of Daniel M. Hutchinson in Support of Plaintiff's Motion (filed herewith), whose material terms are summarized herein. The Settlement Agreement provides that Apple will make a Settlement Payment of $500,000 to settle the Opt-Ins' claims; to cover the costs of administration; to provide Service Awards to Plaintiff and Opt-In (who were each deposed by Apple, produced documents, and subject to extensive written discovery); and to compensate Plaintiff's Counsel for the time and costs incurred. *See* Settlement Agreement ¶ 7. The parties have agreed to the appointment of Simpluris as the Settlement Administrator, to distribute notice, payments, and tax documents, and report to the parties. *Id.* at ¶ 1(h).

### B. Implementation Of The Settlement

If the Court enters the [Proposed] Stipulation of Collective Action Settlement and Release, the Settlement Administrator will calculate the individual Settlement Awards claimed by FLSA Collective Members and notify counsel for each Party of the amounts claimed within seven calendar days of the claims period expiring. *See* Settlement Agreement ¶ 8(e). The Settlement

Administrator will, at each FLSA Collective Member's election, either submit an electronic payment or mail all Settlement Award checks to FLSA Collective Members within 14 calendar days of the claims period expiring. *Id.* The Notice will inform each Opt-In of the Settlement and its terms, including the Distribution Plan and the Release. *See* [Proposed] Notice of Settlement (attached to Settlement Agreement as Exhibit A). Apple will provide the Settlement Administrator with a list of the full names, most recent email, mailing addresses, and telephone numbers, and Social Security numbers of all FLSA Collective Members ("Collective List"), the respective number of workweeks each Collective Member worked during the relevant period and any other relevant information needed so that the Settlement Administrator can process and mail the Notice of Settlement and Claim Form to all FLSA Collective members. *See* Settlement Agreement ¶ 8(a). The Collective List (except for information that identifies the total number of FLSA Collective Members) is confidential and will not be shared with Plaintiffs or Plaintiffs' Counsel, unless Apple consents to the disclosure or unless the Court orders the disclosure. *Id.*

### C. The Distribution Plan

Each Opt-In's Settlement Share will be calculate as a pro-rata share of the Net Gross Settlement Amount based on the FLSA Collective Member's number of workweeks worked as an Apple Solutions Consultant ("ASC") during the period of July 1, 2019 through April 17, 2023 in comparison to the total number of workweeks worked by all FLSA Collective Members during the period of July 1, 2019 through April 17, 2023. *See* [Proposed] Formula for Distribution of Settlement ¶ 1 (attached to Settlement Agreement as Exhibit B). Any amounts of the Gross Net Settlement Amount not distributed to Collective Members shall be available for any Court-approved attorneys' fees and costs, Court-approved administrative costs, and Court-approved service awards. *Id.* at ¶ 2.

Because this is an opt-in FLSA action, members of the proposed FLSA cannot be required to participate in the Settlement unless they affirmatively choose to do so. *See* 29 U.S.C. § 216. Therefore, any remaining settlement funds allocated for proposed collective members who choose not to participate in the Settlement will be returned to Apple. *Id.* at ¶ 3.

### D. The Release

The Named Plaintiff and all Opt-Ins will release Apple from only the FLSA claims litigated in this action. *See* Settlement Agreement ¶ 3. The Released Claims include all claims under the FLSA for statutory damages, liquidated damages, penalties, interest, costs and attorneys' fees, and any other relief relating to properly including commissions in the calculation of the regular rate for payment of overtime; and (b) all claims under the FLSA for statutory damages, liquidated damages, penalties, interest, costs and attorneys' fees, and any other relief relating to compensation for time in transit, including any time in transit between mandatory work activities. *Id.* The Settlement agreement does not release Apple from any California or other state-law claims. *See id.*

Apple will deposit "(1) the amount claimed by FLSA Collective Members; (2) the attorneys' fees and costs approved by the Court; (3) the Service Awards approved by the Court; and (4) the costs of administration" into an "interest-bearing escrow account designated as a Qualified Settlement Fund pursuant to the Internal Revenue Code (the "QSF") designated by Plaintiffs and under the control of the Settlement Administrator." Settlement Agreement ¶ 7(b).

## IV. ARGUMENT

### A. Legal Standard

The settlement of FLSA unpaid wage claims must be either "supervised by the Secretary of Labor or approved by a district court." *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (N.D. Cal. 2016) (hereinafter "*Selk*"). When a district court reviews an FLSA settlement, it must determine whether the settlement addresses the resolution of a "*bona fide* dispute." *See id.*; *see also Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333-1334 (N.D. Cal. 2014) (noting that if a settlement in an employee FLSA suit does reflect a *bona fide* dispute, "such as FLSA coverage or computation of back wages . . . the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation"). If the court is satisfied that a *bona fide* dispute exists, it "must then determine whether the settlement is fair and reasonable." *Selk*, 159 F. Supp. 3d at 1172. Many courts begin with Rule 23(e)'s criteria for assessing a "fair, reasonable, [and] adequate" settlement, acknowledging however that Rule 23's

criteria may not give "due weight to the policy purposes behind the FLSA." *Id*. at 1173. To address this concern, many district courts have "adopted a totality of circumstances approach" that "replicates the factors relevant to Rule 23 class actions where appropriate, but adjusts or departs from those factors when necessary to account for the labor rights at issue." *Id.*; *see also Khanna v. Inter-Con Sec. Sys., Inc.*, 2012 WL 4465558, at *3 (E.D. Cal. Sept. 25, 2012) (stating that because "the standards for certifying an FLSA class and evaluating the fairness of an FLSA settlement are less stringent than those imposed by Rule 23, some courts have found the FLSA requisites satisfied by a showing that Rule 23 requirements have been met"). After considering all relevant factors, if the district court determines the "settlement reflects a reasonable compromise over issues that are actually in dispute, then the court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Selk*, 159 F. Supp. 3d at 1173 (internal quotation marks omitted).

Additionally, alongside stipulation and notice of settlement, settling parties must "file a motion for settlement approval . . . explaining in detail why the settlement agreement is 'a fair and reasonable resolution of a bona fide dispute.'" *Alder v. County of Yolo*, No. 16-cv-01682-VC, Dkt. No. 25 (E.D. Cal. Nov. 20, 2017); *see also* Standing Order for Civil Cases before Judge Vince Chhabria, at ¶ 66 (citing *Alder* and advising parties reaching FLSA settlements to "file a motion for settlement approval explaining why the proposed settlement is a fair and reasonable resolution of a bona fide dispute"). The motion "must discuss, at least, the strength of the plaintiffs' FLSA claims and why plaintiffs' counsel's requested fee award is reasonable in light of the settlement amount." *Id.*

### B. <u>A *Bona Fide* Dispute Existed Between The Parties Regarding The Merits Of Their Claims And Defenses.</u>

A *bona fide* dispute "exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018). A *bona fide* FLSA dispute is demonstrated when the "employer . . . articulate[s] the reasons for disputing the employee's right to a minimum wage or overtime, and the employee . . . articulate[s] the reasons justifying his entitlement to the disputed wages." *Selk*,

159 F. Supp. 3d at 1172; *see e.g., Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 386 (E.D. Cal. 2018) (parties disputing "whether Defendants are entitled to an exemption under the FLSA for farmers" was seen as a *bona fide* dispute). As the Court is well aware, the proposed Settlement comes at the end of almost a year of vigorously contested litigation. During the litigation, the parties contested: (1) the number of hours worked[2] by Opt-Ins; (2) the computation of Opt-Ins' overtime based on their regular rate and commissions earnings; (3) Apple's justification for late-paid overtime; and (4) the enforceability of Apple's arbitration agreement. *See generally* Hutchinson Decl., ¶¶ 40-50. In addition, the parties engaged in numerous in-person and telephonic meet and confer sessions in an attempt to resolve discovery disputes that occurred during the course of litigation. *Id.* at ¶ 50. Mediator Rotman also participated in several telephonic sessions to assist in reaching a compromise or agreement on these various discovery disputes. *Id.* at ¶¶ 60, 69.

Plaintiff sought and reviewed documents regarding Apple's time recording policies, incentive compensation plans, overtime calculation policies and wage statements, often as a result of extensive meet and confer sessions. *See* Hutchinson Decl., ¶¶ 44-50. Additionally, Plaintiff employed an expert who specializes in pay analysis. *See id. at* ¶ 55. The expert analyzed comprehensive earnings statements and travel time and distances for a representative sample of Solutions Consultants. *See id. at* ¶ 53-55. Furthermore, Plaintiff conducted interviews with several Opt-Ins about their job duties and hours worked, as well as Apple's policies and practices. *See id.* at ¶ 25.

Apple strenuously maintained that Plaintiff and the Opt-Ins were correctly paid overtime, that overtime true-up payments were paid in a reasonable amount of time, and that any authorized travel was adequately compensated. *See* Hutchinson Decl., ¶ 76. To support its positions, Apple deposed Plaintiff and two Opt-Ins, focusing on their duties, wage statements, knowledge of policies and work behaviors. *Id.*

Following this discovery, the parties still contested two main questions: 1) whether

---

[2] The parties disputed the existence of substantial off-the-clock work performed by Opt-Ins.

Apple's calculation and payment of Opt-Ins' regular rate in periods after the work occurred was timely; and 2) whether Apple compensated Opt-Ins for all transit time between mandatory work activities. Plaintiff maintained that ASCs' job duties, coupled with Apple's practices and policies, supported Plaintiff's allegation that they were underpaid overtime due to Apple's improper regular rate calculations and uncounted travel time. *See* Hutchinson Decl., ¶¶ 76-77. The parties' disputes can be placed into four categories: 1) legal disputes, 2) factual disputes, 3) disputes about the collective action nature of the lawsuit and 4) damages disputes.

#### 1. **<u>The Parties Disputed Legal Issues Integral To Plaintiff's FLSA Claims.</u>**

The parties hotly contested Apple's potential liability for Plaintiff's regular rate claims. Plaintiff contended that Apple had a duty to pay overtime payments in a timely fashion. Plaintiff maintained that "FLSA wages are 'unpaid' unless they are paid on the employees' regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1538 (9th Cir. 1993). In other words, wages must be paid "on time." *Id*.; *see also* 1 Guide to Employment Law and Regulation § 12:2 (When Wages Are Due) (citing cases). Thus, an FLSA violation occurs "when the employer fails to pay the required compensation for any workweek at the regular payday for the period in which the workweek ends." 29 C.F.R. § 790.21(b).

Apple, in contrast, maintained that it complied with Plaintiff's authorities by paying ASCs' overtime wages on time and adjusting those payments to account for commissions payments as soon as practicable. Apple argued that Plaintiff's position was "defied by the practical reality that it takes time to calculate, validate, and process commission payments for hundreds of Lead ASCs and ASCs in a multinational corporation." *See* Hutchinson Decl., ¶ 76. Thus, Apple claims their overtime payments occurred in a timely fashion.

Similarly, the parties had a bona fide dispute regarding Plaintiff's travel time claims. Plaintiff maintained that "where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38; *see, e.g., Gomley v. Crossmark,*

*Inc.*, 2015 WL 1825481, at *2 (D. Idaho Apr. 22, 2015) ("[I]f off-the-clock administrative tasks are non-de minimis, and constitute principal activities, the tasks are part of the workday pursuant to the continuous workday doctrine, making morning commute time after completing such tasks compensable.").

For its part, Apple noted that commute from home to work is generally not compensable. That is particularly true where employees are relieved of duty and have enough time to partake in non-work-related activities. Here, Apple therefore maintained that the gap in time between morning meetings and the start of work at on-site job locations was, as a general rule, sufficiently long that the time was not compensable. *See* 29 C.F.R. § 785.16(a) (periods of time that are long enough for the employee to pursue their own personal pursuits are not compensable); 29 C.F.R. § 785.19 (bona fide meal periods are not compensable).

**2. The Parties Disputed Factual Issues Integral To Plaintiff's FLSA Claims.**

The parties likewise disputed the factual bases for Plaintiff's allegations. For the regular rate claims, Apple maintained that its retroactive overtime payments including commissions were not "late" because Apple cannot calculate the ASCs' commissions until it receives data from store sales and online sales. *See* Hutchinson Decl., ¶ 76. Apple claimed that adjustments must be made for, among other things, returns. *See id*. Plaintiff, in contrast, maintained that overtime commission payments were made late and that complex calculation was not necessary.

The travel time issue contained many factual disputes as well. Plaintiff testified that he traveled directly to his on-site work location after mandatory morning meetings. Notably, Apple argued that ASCs' time records contradicted Plaintiff's testimony. *See id.* at ¶ 77. Apple created a model to approximate the "frequency, compensability, and value of the travel time claim." *See id.* Based on this model, Apple maintained that only a small fraction of the time entries could be consistent with Plaintiff's allegations. *See id.* Even for those time entries, Apple argued that there are reasons why the time might not be compensable, for example, because ASCs had the option of taking the meeting from any private space, including their assigned stores. *Id.*

### 3. The Parties Disputed The Collective Nature Of Plaintiff's FLSA Claims.

The parties also dispute the collective nature of this action. Apple maintained that the facts relevant to Plaintiff's commissions calculations and travel time for Plaintiff and Opt Ins were highly individualized in nature and not suitable for collective action treatment. *See* Hutchinson Decl., ¶ 78. For example, Apple argued that Opt-In Pflughaupt's deposition testimony suggested that each region operated under different practices, including with respect to the scheduling of ASC meetings/calls." *Id.* To the contrary, Plaintiff claimed that Apple's practices applied consistently nationwide. *See id.* at 26.

### 4. The Parties Disputed The Amount Of Damages Incurred By Plaintiff And The Opt-Ins.

In addition to disputing liability and collective treatment, the parties contested the measure of damages, both in terms of the hours worked by Opt-Ins, distance travelled by the Opt-Ins and the appropriate method for calculating unpaid overtime. Hutchinson Decl., ¶ 79. Plaintiffs amassed evidence of substantial unpaid travel time accumulated by Opt-Ins. *See id.* at ¶¶ 45-55, 77. Apple argue that, even if Plaintiff prevailed on all his claims, any damages based on its time records would be de minimis. *Id.* at ¶¶ 79. The preceding is proof that a *bona fide* dispute existed between the parties over potential liability under the FLSA.

## C. The Settlement Represents A Fair And Reasonable Resolution Of A *Bona Fide* Dispute.

When assessing FLSA settlements, "many courts have adopted a totality of circumstances approach that emphasizes the context of the case and the unique importance of the substantive labor rights involved." *Selk*, 159 F. Supp. 3d at 1173; *see also Slezak v. City of Palo Alto*, 2017 WL 2688224 (N.D. Cal. June 22, 2017), at *3 (noting that to "determine whether the settlement is fair and reasonable, the Court looks to the 'totality of the circumstances' and the 'purposes of FLSA'"). Under the totality of circumstances approach, the following factors considered when "determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the

settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Selk*, 159 F. Supp. 3d at 1173.

### 1. <u>The Settlement Is Within The Plaintiffs' Range Of Possible Recovery</u>

A district court's assessment of a plaintiff's range of possible recovery "ensure[s] that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174 (finding a reasonable range of recovery where the settlement was 26% to 50% of the best possible recovery, including attorney's fees and costs). This $500,000 settlement will cover all 230 Opt-In claims within the relevant period (July 1, 2019 through April 17, 2023) relating to calculation of the regular rate and off-the-clock travel time. Hutchinson Decl., ¶ 74.

Discovery revealed that Apple retroactively paid ASCs commission-based overtime via a true-up. *See* Hutchinson Decl., ¶¶ 56, 76. While Plaintiff maintains that the payments arguably were late, and notes Apple never clearly communicated information about its practices to the Solutions Consultants themselves, the fact remains that this discovery narrowed the issues, in that the only potential damages for this claims are liquidated damages for late overtime payments (approximately $216,513.30). *See id.* at 74.

Plaintiff's expert calculated damages for unpaid travel time at approximately $2,906.20 per collective member, or $668,426.87 in total. *See* Hutchinson Decl., ¶ 74. If awarded, liquidated damages would add another $668,426.87 to that amount. *See id.*

Thus, the $500,000 settlement amount is approximately 73% of the best possible recovery of actual damages or 37% of the best possible recovery if liquidated damages are included. *See* Hutchinson Decl., ¶ 74. This settlement amount is therefore reasonably related to the "true settlement value" considering the risk that both parties would have faced moving forward with litigation and the tenuous nature of the regular rate claim. *See id.*

### 2. <u>The Settlement Occurred At An Appropriate State Of The Litigation</u>

When settlement occurs in an advanced stage of proceedings, parties have had the opportunity to carefully investigate the claims before coming to a resolution. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014); *see also Slezak*, 2017 WL 2688224 at *4 (noting

that a court "assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement").

In this matter, there was a substantial amount of discovery, including depositions of the named Plaintiff and Opt-Ins and extensive document production. *See* Hutchinson Decl., ¶ 76. Before the case was filed, Plaintiff conducted a fair amount of pre-filing investigation and informally requested information from Apple. *See id* at ¶¶ 25-26. The parties settled on the eve of summary judgment briefing. *Id*. at ¶ 70. Though the case has settled in what can be considered its early stages, parties had enough information to make a well-informed decision due to extensive document production, substantial review of policies and wage statements, expert analysis of documents produced and depositions.

**3. <u>The Litigations Risks Weigh In Favor Of Settlement Approval</u>**

Settlement approval is favored where "there is a significant risk that litigation might result in a lesser recovery for the class or no recovery at all." *Slezak*, 2017 WL 2688224 at *4; *see e.g, Selk*, 159 F. Supp. 3d at 1174 (finding settlement was favored when the employer's practice allegedly denied class members fair compensation but was not per se illegal and Plaintiff success at trial was "far from assured"); *Estorga v. Santa Clara Valley Transportation Auth.*, 2020 WL 7319356, at *4-5 (N.D. Cal. Dec. 11, 2020) (finding settlement was favored when the Court "already limited this case to 'mid-shift' liability only," limiting plaintiffs' recovery).

Here, litigation of the travel time claim would entail both legal and factual risks. Plaintiff would argue that employees who immediately travel from required work meetings to their worksites are entitled to compensation for their travel time. *See* 29 C.F.R. § 785.38 (stating that when an employee is "required to report at a meeting place to receive instructions or to perform other work there . . . the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice"); *see e.g.*, *Gomley*, 2015 WL 1825481, at *2. Apple, in response, would argue that commuting time is generally unpaid and that travel time is not compensable. *See* 29 C.F.R. § 785.16(a) (stating that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked"); 29

CFR § 785.19(a) (stating, "[b]ona fide meal periods are not worktime. . . . These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period"). Answering this legal question could require highly individualized and fact-specific inquiries into each proposed collective member's travel time. If Apple's contentions were accepted by the court or a jury, Solutions Consultants who did not travel immediately to work may not be entitled to payments.

Similarly, the regular rate claim was substantially difficult. It would have been Plaintiff's position that the overtime commission payments were made late. When employers do not pay "on time . . . the [FLSA's] liquidated damages provision . . . [states] that *double payment* must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." *Biggs*, 1 F.3d at 1541. Claims for liquidated damages are inherently more difficult because plaintiffs have to prove "willfulness" on the part of the late-paying employer. *See Ray v. Los Angeles Cnty. Dep't of Pub. Soc. Servs.*, 52 F.4th 843, 851-852 (9th Cir. 2022), *cert. denied sub nom. Los Angeles Cnty. DPSS v. Ray*, 2023 WL 3937617 (U.S. June 12, 2023). And here, Plaintiff would have the additional burden of making the factual showing that Apple could have paid the regular rate of pay sooner. *See id.* (noting that liquidated damages are placed upon "recalcitrant" employers who use "'ticky-tack' reasons to attempt to evade wage and hour laws."). That showing could prove particularly difficult where, as here, Apple would argue that it made payments according to a set schedule and that commissions amounts were not known and reported Apple until several weeks or months after the sales occurred.

**4. <u>The Settlement's Release Provision Is Limited To The Current Dispute</u>**

Ninth Circuit courts have rejected blanket releases of all potential claims against an employer "for all unlawful acts whatsoever," but have approved releases of FLSA "claims sufficiently related to the current litigation." *Madrid v. teleNetwork Partners, LTD.*, 2019 WL 3302812, at *5 (N.D. Cal. July 23, 2019); *see also Selk*, 159 F. Supp. 3d at 1178 (noting that courts "review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation"); *see e.g., Estorga*, 2020 WL 7319356, at *5 (finding that a release provision is suitable where it is

limited to "claims arising from the instant action (i.e., claims related to 'start-end' or 'mid-shift' travel time)").

The Settlement Agreement's Release is specific in nature and does not take the form of a blanket release of all potential claims against Apple for tangentially related activity. The Settlement Agreement releases Plaintiff and the FLSA Collective Members from "all FLSA claims asserted in the Lawsuit." Settlement Agreement ¶ 3. This is limited to FLSA Collective Member claims (not state-based claims) against Apple "for the period of July 1, 2019 through the date the Court enters an order approving the Settlement." *Id.* The Settlement Agreement's Release specifically includes claims related to "properly including commissions in the calculation of the regular rate for payment of overtime" and "compensation for time in transit, including any time in transit between mandatory work activities." *Id.*

**5. Plaintiffs' Counsel Is Experienced As It Relates To FLSA Wage & Hour Litigation**

Ninth Circuit courts have held that the "opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Selk*, 159 F. Supp. 3d at 1176. With respect to the lead lawyers on the case[3], Daniel Hutchinson is the chair of the employment group at Lieff Cabraser, one of the nation's largest plaintiff-side firms. Hutchinson Decl., ¶¶ 8-9. Robert Landry is an experienced employment law attorney based in Louisiana who counseled companies of all sizes in a broad array of employment law cases during his time at a large New Orleans law firm. Landry Decl., ¶¶ 1-12. Charles Stiegler is a labor and employment lawyer in New Orleans, Louisiana with sixteen years of experience working with both employers and employees in matters involving all aspects of labor and employment law. Stiegler Decl., ¶¶ 5-13. Nothing that has emerged within this litigation calls into question the experience of counsel or raises doubt about counsel's judgment.

---

[3] The lawyers with only modest time in the matter are likewise experienced. Rachel Geman is a partner at Lieff Cabraser who has extensive FLSA litigation experience and serves as the employee-side chair of the ABA's Workplace and Occupational Safety and Health Law Committee. Hutchinson Decl., ¶ 92. Lieff, Cabraser associates with lower hourly rates also worked on the matter. *Id.*

**6. The Settlement Process Contained No Evidence Of Fraud Or Collusion.**

The Ninth Circuit has found that signs of fraud and collusion are: "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded . . . (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class . . . and, (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Madrid*, 2019 WL 3302812, at *6-7 (stating that the Ninth Circuit courts use the *Bluetooth* factors to gauge the existence of fraud or collusion in FLSA settlements); *Alder v. Cnty. of Yolo*, No. 16-cv-01682-VC, Dkt. No. 27, at *1-2 (E.D. Cal. Jan. 22, 2018) (finding it unreasonable for the party that benefits from a settlement reversion to also provide notice to the collective members and that Plaintiff's attorneys receiving both statutory and contingent fees is unreasonable as the case settled at an early stage and was not complex). Courts assessing the validity of a settlement look not only for explicit signs of collusion, "but also for more subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *In re Bluetooth Headset*, 654 at 946-947. An FLSA settlement "following sufficient discovery and genuine arms-length negotiation is presumed fair." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012).

The proposed Settlement was the result of almost a full year of investigation and discovery, depositions, two day-long mediation sessions, and a further two months of negotiations between each mediation, all under the supervision of a skilled mediator. Hutchinson Decl., ¶¶ 25-72. Those negotiations were conducted at arm's length by experienced counsel after extensive discovery. *Id.* at ¶ 61. As such, this FLSA settlement has the characteristics of those Ninth Circuit courts have presumed fair. The potential return of unclaimed funds to Apple and Plaintiff's counsel's proposed attorneys' fees are also warranted and consistent with the *Bluetooth*

factors.

**a. <u>The Return To Apple Of Unclaimed Funds For Collective Members Who Choose Not To Participate In the Settlement Is Reasonable.</u>**

Because this is an opt-in FLSA action, members of the proposed FLSA collective cannot be required to participate in the Settlement unless they affirmatively choose to do so. *See* 29 U.S.C. § 216(b). Here, Collective Members must therefore opt-in to participate and receive a share of the settlement. *See id.* At the same time, those individuals who choose not to opt-in to the action will also not release any potential claims. *See id.* If they do not participate in the lawsuit and agree to a release, it is reasonable that they not receive a share of the Settlement Fund money. To lessen the Court's worries of the potential harms associated with reversionary settlements, parties need to "adequately justif[y] why a reversionary settlement . . . is appropriate and consistent with FLSA's aims." *Alder*, No. 16-cv-01682-VC, Dkt. No. 27, at 2 (E.D. Cal. Jan. 22, 2018). Plaintiff can adequately justify that result here.

The existence of a reversionary settlement in this case is appropriate and not a sign of collusion. First, the fact that the parties engaged in mediation twice and settled only pursuant to a mediator's proposal suggests that collusion was not present. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 612-613 (E.D. Cal. 2015) (finding that when an FLSA reversionary settlement was in question, "[p]articipation in mediation prior to a settlement 'tends to support the conclusion that the settlement process was not collusive.'"). Second, the modest value of the potential claims and the amount of the settlement lessens the likelihood that collusion would be motivating factor. *See id.* (stating that the "relatively low value of the action" indicated collusion was not likely). Thirdly, Plaintiff's counsel obtained a quite positive result for the Collective. *See Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-457 (9th Cir. 2009) (deciding that a reversionary settlement was worthy of approval in part because counsel "obtained exceptional results for the class" and the settlement was negotiated "before the Department of Labor issued an Opinion Letter that would have reduced the value of plaintiffs' claims"). Additionally, to ensure all potential opt-ins have the opportunity to receive the award they deserve, Simpluris will be in charge of distribution notice of settlement to Collective Members, not Apple. *See* [Proposed]

Notice of Settlement (attached to Settlement Agreement as Exhibit A); *see also Alder*, No. 16-cv-01682-VC, Dkt. No. 27, at 2 (E.D. Cal. Jan. 22, 2018) (denying settlement where the defendant was responsible for settlement class notice). Apple's only role in this process will be to provide the relevant information to Simpluris for them to have the opportunity to contact as many Collective Members as possible. *See* Settlement Agreement ¶ 8(a). As Apple will adopt a neutral role in the settlement notice process, and Simpluris will make an unbiased effort to contact as many Collective Members as they can, the settlement reversion to Apple is appropriate.

**b. Class Counsel Will Receive Reasonably Proportionate Share Of The Settlement.**

The lodestar method is most appropriate to calculate an award of attorneys' fees here. In FLSA settlements, district courts shall, "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Typically, attorneys' fees under the FLSA are determined using the lodestar method." *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1185 (E.D. Cal. 2018). When FLSA plaintiff counsel provides "information regarding the number of hours expended by counsel and their hourly rates which are the starting point for a lodestar analysis," should the court "accept the figures provided by counsel . . . [l]odestar amounts are presumed to be reasonable." *See id*. at 1185-1186 (finding attorney's fees near counsel's lodestar amount to be reasonable); *see e.g., Adoma*, 913 F. Supp. 2d at 981-984 (finding where a lodestar amount was $801,445 with a 1.45 multiplier was well within the range of Ninth Circuit approvals).[4]

Here, Plaintiff's counsel will request attorneys' fees of $ 200,000 which is a small fraction—less than 47%—of their actual lodestar of $425,796. Hutchinson Decl., ¶ 84; Landry Decl., ¶ 39; Stiegler Decl., ¶ 31. Even this figure grossly undercounts the actual work Plaintiff's counsel have expended on this lawsuit, as Plaintiff's counsel have excluded from that figure an

---

[4] In the alternative, the Ninth Circuit benchmark in common fund cases of 25% can be sometimes applied to FLSA cases, but, even then, courts approve awards beyond 25% when the circumstances deem fit. *See e.g., Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1143-1145 (N.D. Cal. 2016) (deciding that, based on a lodestar-based request of $66,335 in fees, a reasonable fee based on $72,926 in FLSA damages was $42,855, more than 50%). Plaintiff's counsel's request here amounts to 40% of the settlement fund, which is proportionate based on the circumstances.

additional 147 hours of work on this case. Hutchinson Decl., ¶¶ 85, 97, 101. Counsel for the Collective request nothing beyond this fractional lodestar-based, per-hour fee calculation, with per-hour fees reasonable for the Ninth Circuit. Hutchinson Decl., ¶¶ 84-85; Landry Decl., ¶¶ 45-46; Stiegler Decl., ¶¶ 29-30.. As counsel requests fees based solely on work performed, with reasonable per-hour fees and explicit illustration of the hours worked, the request is not disproportionate.

Having satisfied the relevant factors generally considered by Ninth Circuit courts approving FLSA settlements, the Settlement Agreement should be considered a fair and reasonable resolution of a bona fide dispute over FLSA coverage.

### D. **The Settlement's Proposed Named Plaintiff Service Awards Are Fair And Reasonable.**

Service awards are permitted in in FLSA cases to "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019).

The Settlement provides for service awards of $5,000 and $5,000, respectively, for Named Plaintiff Anthony Foreman and Opt-In Amy Pflughaupt, in recognition for the time they spent, the risks they incurred, and the results they obtained on behalf of their fellow Opt-Ins. Mr. Foreman and Ms. Pflughaupt participated in all litigation-related activities requested of them by both sets of counsel and provided input regarding document discovery. *See* Hutchinson Decl., ¶¶ 47-50. They have been in continuous contact with Plaintiffs' Counsel during the past year, from the initial investigation of the case to the present. *Id.* In addition, they responded to Apple's discovery requests, answering interrogatories, providing documents in response to document requests, and submitting themselves for full-day in-person depositions. *Id.*

### E. **The Settlement's Proposed Allocation For Plaintiffs' Counsel Attorneys' Fees And Costs Award Is Reasonable.**

In FLSA settlements, district courts shall, "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Settlement provides for Plaintiff's attorneys' fees of

$200,000, plus reimbursement of costs up to $33,942.30. Plaintiffs' Counsel have spent over 627.70 hours litigating this matter, with a total lodestar of $425,796. Hutchinson Decl., ¶¶ 98-102; Landry Decl., ¶¶ 39-44; Stiegler Decl., ¶¶ 23-31. Plaintiffs' Counsel have spent $34,840.20 in out-of-pocket costs. Hutchinson Decl., ¶ 102. Under the Ninth Circuit standard, both components of the Settlement are reasonable.

**1. <u>The Settlement's Proposed Attorney's Fees For Plaintiff's Counsel Are Reasonable.</u>**

As stated above, the lodestar method for fee calculation is common place in FLSA cases (and, in the alternative, an award of 40% of the Settlement Fund is reasonable under the circumstances). *See Adoma*, 913 F. Supp. 2d at 981-985; *Andrade*, 225 F. Supp. 3d at 1143-1145; *Kerzich*, 335 F. Supp. 3d at 1185-1192. When considering the reasonableness of a lodestar-based attorney fee in a FLSA case, courts have assessed: 1) the quality of representation, 2) the benefit obtained by the class, 3) the complexity and novelty of the issues presented, 4) the risk of nonpayment, 5) a lodestar cross-check against the wider market, and 6) reasonableness of the fee arrangement. *See Adoma*, 913 F. Supp. 2d at 981-985. Here, Plaintiffs' Counsel's total lodestar is $425,796; the proposed fund corresponds to a *negative*, fractional lodestar multiplier of less than 0.47x. Hutchinson Decl., ¶ 84; Landry Decl., ¶ 39; Stiegler Decl., ¶ 31. The lodestar total incorporates pre-filing settlement discussions with Apple, the complaint, analysis of Apple's records and review of Apple discovery, depositions, and settlement of the Collective's claims—but does not include over 147 hours of work that Plaintiff's counsel excluded in an exercise of billing discretion. *See* Hutchinson Decl., ¶¶ 84-87, 97, 104. The complexity of regular rate cases and the quality of representation necessary to litigate with a defendant such as Apple weighs in favor of the requested fee being reasonable. Further, each Opt-In member would receive $1,156.77, which is a substantial amount. Additionally, Plaintiff Counsel's per hour fee of $318.62 (i.e., $200,000 ÷ 627.7) is more than fair within the Ninth Circuit and far below the standard fees in this District. *See id. at* ¶ 101. Accordingly, the Settlement's fee allocation is reasonable.

**2. The Settlement's Proposed Cost Reimbursement Is Reasonable.**

The Settlement's provision for reimbursement of costs is appropriate. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *Fossett v. Brady Corp.*, 2021 WL 2273723, at *10 (C.D. Cal. Mar. 23, 2021) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Courts have approved cost requests when they are "reasonable under the circumstances and appropriately documented." *See Selk*, 159 F. Supp. 3d at 1181; *see e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) (finding "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees" to be reasonable and reimbursable costs because, inter alia, they were necessary for complex litigation).

To date, counsel have spent $34,840,.20 in out-of-pocket costs on items such as deposition transcripts, travel, experts, and mediation fees, with costs continuing through full implementation of the Settlement. Hutchinson Decl., ¶ 102. These costs were necessary to the prosecution of the litigation and were incurred reasonably. Hutchinson Decl., ¶ 97. Accordingly, these costs are reimbursable.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve this FLSA Collection Action Settlement, which includes payments to the Opt-Ins according to the Distribution Plan set forth therein, assignment of Settlement Administrator duties to Settlement Services, Inc., Service Award Payments to the Named Plaintiff and Named Opt-Ins, and attorneys' fees and cost payments to Plaintiff's Counsel.

Dated: August 16, 2023

Respectfully submitted,

By: */s/ Daniel M. Hutchinson*
Daniel M. Hutchinson

Daniel M. Hutchinson (SBN 239458)

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008
dhutchinson@lchb.com

Rachel Geman (admitted *pro hac vice*)
Jessica Moldovan (admitted *pro hac vice*)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592
rgeman@lchb.com
jmoldovan@lchb.com

Charles J. Stiegler, (SBN 245973)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, LA 70124
Telephone: 504.267.0777
Facsimile: 504.513.3084
Charles@StieglerLawFirm.com

Robert B. Landry III (*pro hac vice*)
ROBERT B. LANDRY III, PLC
5420 Corporate Boulevard, Suite 303
Baton Rouge, LA 70808
Telephone: 225.349.7460
Facsimile: 225.349.7466
rlandry@landryfirm.

*Attorneys for Plaintiffs and Opt-Ins*